BENJAMIN N. FORBES *et al.* v. PETER MOHR.

No. 13,633. (76 Pac. 827.)

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Liability of Directors to Depositors— Not Released by Corrupt Practices of Cashier.* A director of an insolvent bank is not excused from the liability to a depositor therein imposed by sections 65 and 66 of the banking law of this state (Laws 1879, ch. 47, §§ 1, 2; Gen. Stat. 1901, §§ 471, 472), by showing that the insolvent condition of the bank was caused by the false, fraudulent and corrupt practices of the cashier, so adroitly concealed and covered up by him that such condition could not have been discovered by an examination into the bank's affairs, when such director has wholly failed to make any examination into those affairs.

2. —— *Duties of Directors to Make Frequent and Thorough Examination.* It is the duty of directors to examine into the affairs of their banks with reasonable frequency and thoroughness, for the purpose of thereby acquainting themselves with their condition, and, where they fail so to do, they will be held liable to depositors, in case of insolvency, for deposits made with their assent; and this, even though by such examination the directors would not have discovered the insolvent condition of the bank.

3. ATTORNEY AND CLIENT—*Champertous Contract Not a Defense.* That an action is being carried on under a champertous contract between the plaintiff and his attorney cannot be pleaded as a defense.

Error from Doniphan district court; WILLIAM I. STUART, judge. Opinion filed May 7, 1904. Affirmed.

*Jackson & Jackson, C. W. Reeder,* and *Ryan & Ryan,* for plaintiffs in error.

*Allen & Bryant, J. W. Dana,* and *A. C. Bell,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : Plaintiffs in error were directors in the Wathena State Bank and defendant in error brought this action against them to recover deposits made by him in that bank, it having become insolvent. The claimed liability was based upon the provisions of sections 471 and 472, General Statutes of 1901, the same being sections 65 and 66 of the banking law (Laws 1879, ch. 47, §§ 1, 2), which, so far as they are necessary to be considered in this case, are as follows :

"It shall be unlawful for any president, director, manager, cashier, or other officer of any banking institution, to assent to the reception of deposits or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent or in failing circumstances; and it is hereby made the duty of every such officer, agent or manager

of such banking institution to examine into the affairs of the same, and, if possible, know its condition. And upon failure of any such person to discharge such duty, he shall, for the purpose of this act, be held to have had knowledge of the insolvency of such bank, or that it was in failing circumstances. Every person violating the provisions of this section shall be individually responsible for such deposits so received, and all such debts so contracted. . . .

"In all suits brought for the recovery of the amount of any deposits received or debt so created, all officers, agents or managers of any such banking institutions, charged with having so assented to the reception of any such deposit, or the creation of such debt, may be joined as defendants or proceeded against severally; and the fact that such banking institution was so insolvent or in failing circumstances at the time of the reception of the deposit charged to have been so received, or the creation of the debt charged to have been so created, shall be *prima facie* evidence of such knowledge and assent to such deposit or creation of such debt on the part of such officer, agent or manager so charged therewith."

Plaintiff's petition contained allegations sufficient to entitle him to a recovery under the provisions of these sections. Defendants' answers contained several defenses — No. 5 being substantially that the cashier was a thorough business man of long experience, good standing and reputation for honesty and integrity, with a good reputation in the community and with the patrons of the bank, and that the plaintiff, in making his deposits, relied exclusively upon these qualities of the cashier, and not upon the connection of the defendants with the bank as directors; that the directors had no knowledge of the cashier's methods in keeping the books of the bank, or of any erroneous, false, untrue or incorrect entries made by him in such books; that it would have been impossible for them

to detect any such errors if they had made an examination of the books without the aid of an expert accountant; that they had implicit confidence in the integrity, honesty, probity and accuracy of the cashier, and of the books kept by him, and had no reason to suppose that he was in any manner conducting the business or keeping the books of the bank in any but a honest manner ; that they could not, by an examination of the books and affairs of the bank, have determined that the bank was not in a safe, solvent and flourishing condition ; and that they did not, in fact or in law, have notice or knowledge that the bank was in solvent or in failing circumstances at any time during the period when plaintiff was making deposits therein. This defense closed with the following language, which in effect contains the gist of it all :

"And this defendant alleges and charges the fact to be that if said bank was in failing circumstances and insolvent it was caused by and through the false, fraudulent and corrupt practices of the said cashier thereof in making false and fraudulent entries in the books of said bank and in the accounts of its customers therein, and in making false, fraudulent and forged paper payable to said bank, with the names of responsible men fraudulently forged and signed thereto, for the purpose of deceiving defendant and others interested in the business and management of said bank and in the transaction of its business, and for the purpose of deceiving all persons interested therein, and was so done in such manner and under such circumstances and in such ways that this defendant could not possibly have discovered such false and fraudulent entries, or that such paper was false and forged, and that such bank was by reason thereof insolvent or in failing circumstances, and that upon an examination of the books, papers and affairs of said bank and of the accounts therein, and notes and bills receivable held by it, he could not have discovered that said bank was insolvent or in failing circumstances."

The answer nowhere pleaded that any examination of the affairs of the bank had been made by the directors, but rather admitted that none had been made. To this defense the plaintiff demurred, the demurrer was sustained, and the defendants are now here raising the question whether it contained matter barring plaintiff's recovery. We are thus called upon for an interpretation of the quoted sections of the banking law, with a view of ascertaining the liability of directors imposed thereby for deposits made in an insolvent bank.

In the absence of a statute the debt created by the deposit of money in a bank is due from the corporation only and not from the directors. The mere nonfeasance or misfeasance of directors in respect to their duties would not render them liable to a depositor. However, beyond question this liability may be enlarged by statute, and considerations of sound public policy require that it be done. Properly to meet and effectuate these considerations the quoted sections were passed by the legislature, and their interpretation should be undertaken in a fair spirit of liberality to accomplish the purpose for which they were intended. The liability thereby created should be enforced as indicated by the ordinary interpretation of the language used. It was evidently the thought and purpose of the legislature to guard depositors from loss through the incompetency or criminality of officers chosen by directors by imposing upon such directors the burden of giving watchful care to the affairs of the bank, and by adding to their duties something more than care in the selection of president and cashier, to wit, the duty of keeping watch of their conduct by making an examination into the affairs of the bank with reasonable frequency and thoroughness. With

these suggestions as to interpretation let us look at the statute.

The first clause of section 65 makes it unlawful for a director to assent to the reception of deposits by the bank after he has knowledge that the bank is insolvent or in failing circumstances. The second clause makes it the duty of such officer "to examine into the affairs of the same, and, if possible, know its condition." The third clause provides that if such officer fail to discharge such duty he shall, for the purposes of fixing his liability, be held to have had knowledge of the insolvency or the failing condition of the bank. The fourth clause holds such officer to individual responsibility if he fail in these respects. The pregnant portion of section 66 is that the fact that the bank was insolvent or in failing circumstances at the time of the reception of the deposit shall be *prima facie* evidence of the knowledge on the part of all these officers that it was in such a condition.

The contention of the plaintiffs in error, put into as narrow a compass as possible, is that the proper interpretation of these sections is that it is the duty of a director to examine into the affairs of the bank, and if he fail to do so he shall be held to have knowledge of the bank's insolvency, and consequently be liable to a depositor if by such examination it would have been possible for him to ascertain the condition of the bank. We are unable to agree with them in this construction. It seems to us strained and unnatural, and insufficient to accomplish the evident purpose of the legislature.

By the second clause of section 65, as above stated, it is made the positive duty of the officer to examine into the affairs of the bank. This duty stands out clearly by itself. An examination by the officer is

required, regardless of what it may show.    It is to be such an examination in frequency, thoroughness and accuracy as will, with reasonable certainty, acquaint him with the condition of the bank.    A director may not excuse himself from liability to a depositor by saying that he was relying upon the honesty of the cashier whom he had employed, and hence made no examination of the affairs of the bank ; or that it would have been useless for him to make such examination because the peculations of the cashier were of such character, and carried on and concealed with so skilful a hand, that he, not being an expert, could not have discovered them.    The legislature undoubtedly thought to lay upon those in active control of banks the restraining influence of reasonably frequent and thorough examinations of their affairs.    The qualifying phrase, "if possible," has application to the discovery of wrong conditions by reasonable examination, and does not serve to excuse the want of all examination by an incompetent director.    In short, the requirement of the statute is that the examination be made, and be of such character as would result in a knowledge of the condition of the bank if such knowledge could possibly, within the range of reasonable frequency and thoroughness, be obtained.

We do not think that the plea of a director sought to be charged with liability under the quoted statutes, that he made no examination, but that if he had, it would not have been possible for him to ascertain the failing condition of the bank, is sufficient to excuse him from the liability imposed by law.

The eighth paragraph of the answer charged that the action was being prosecuted under a champertous contract between the plaintiff and his attorney.    A demurrer to this defense was also sustained, and, we think, correctly.    It was no concern of the defendants

that the plaintiff and his attorneys had entered into a champertous arrangement; it nowise affected the obligation of the defendants to the plaintiff. Its infirmity concerned the parties to such contract, and not the parties to the action to which it relates. (*A. T. & S. F. Rld. Co. v. Johnson*, 29 Kan. 218; 6 Cyc. 880.)

The trial court did not err in sustaining the demurrer to either defense, and hence the judgment is affirmed.

All the Justices concurring.