## No. 25,296.

G. L. RAMSEY, *Plaintiff*, v. CARL J. PETERSON, as Bank Commissioner, etc., et al., *Defendants.*

### SYLLABUS BY THE COURT.

MANDAMUS—*Insolvent Bank—Depositor Does Not Lose Right to Dividends by Suing Bank Officers—Election of Remedy—Waiver—Estoppel.* Finding a bank operating under the depositors' guaranty fund act to be insolvent, the bank commissioner took charge of it to wind up its affairs. A depositor proved his claim and was issued a certificate, pursuant to statute, evidencing his right to interest, dividends, and participation in the depositors' guaranty fund. Subsequently, the certificate holder commenced an action against officers of the bank under the statute making them individually responsible for deposits received after knowledge of the bank's insolvency. Afterwards the receiver of the bank published a notice that a dividend of twenty per cent would be paid. The certificate holder applied for his dividend, payment was refused, and he prays for a writ of mandamus to compel payment. *Held,* that by suing the bank officers on their statutory liability, plaintiff did not preclude himself from enforcing payment of the dividend on the grounds of election of inconsistent remedy, waiver, or estoppel, that he has no adequate remedy in the ordinary course of law, and that the writ should issue.

Original proceeding in mandamus. Opinion filed January 12, 1924. Writ allowed.

*John J. Jones, Hugo T. Wedell,* both of Chanute, *B. R. Leydig, K. M. Geddes,* and *E. W. Grant,* all of El Dorado, for the plaintiff.

*W. H. Carpenter,* and *W. R. Carpenter,* both of Marion, for the defendants.

Ramsey v. Bank Commissioner.

The opinion of the court was delivered by

BURCH, J.: The action is one by a depositor in the defunct Butler County State Bank, to compel the bank commissioner, through his receiver, to pay to the depositor a dividend of twenty per cent declared out of assets of the bank and noticed for payment.

The bank commissioner took charge of the bank on March 30, 1923. The bank was operating under the depositors' guaranty fund act, a portion of which reads as follows:

"All deposits not otherwise secured shall be guaranteed by this act." (Gen. Stat. 1915, § 600.)

On April 23, the bank commissioner, pursuant to the guaranty-fund act, issued to plaintiff, on proof of his claim, certificate No. 617, certifying that he had on deposit in the bank when it was closed the sum of $22,726.16, and evidencing plaintiff's right to interest, dividends, and participation in the guaranty fund.

Previous to September 5, the receiver published, pursuant to statute, the following notice:

"All persons who have filed their proofs of claim for the amount of their deposit with the bank, are hereby notified that, beginning on Wednesday, September 5, 1923, a dividend of 20 per cent will be paid. Payment made at the banking rooms of the bank in El Dorado, Kansas."

Plaintiff made due demand for his dividend, payment of which was refused. The ground of refusal was that in June plaintiff had sued certain officers of the bank for the amount of his deposit, under the provisions of chapter 47 of the Laws of 1879, sections 1, 2, and 3, pertinent portions of which read as follows:

"It shall be unlawful for any president, director, manager, cashier, or other officer of any banking institution, to assent to the reception of deposits or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent or in failing circumstances; and it is hereby made the duty of every such officer, agent or manager of such banking institution to examine into the affairs of the same, and, if possible, know its condition. And upon failure of any such person to discharge such duty, he shall, for the purpose of this act, be held to have had knowledge of the insolvency of such bank, or that it was in failing circumstances. Every person violating the provisions of this section shall be individually responsible for such deposits so received, and all such debts so contracted: . . .

"In all suits brought for the recovery of the amount of any deposits received or debt so created, all officers, agents, or managers of any such banking institutions, charged with having so assented to the reception of such deposit, or the creation of such debt, may be joined as defendants or proceeded

against severally; and the fact that such banking institution was so insolvent or in failing circumstances at the time of the reception of the deposit charged to have been so received, or the creation of the debt charged to have been so created, shall be *prima facie* evidence of such knowledge and assent to such deposit or creation of such debt on the part of such officer, agent or manager so charged therewith.

"The foregoing sections shall also apply to private bankers, their officers, managers and agents; and for the purposes of this act, persons who carry on the business of banking by receiving money on deposit, . . . shall be deemed private bankers." (Gen. Stat. 1915, §§ 584, 585, 586.)

The depositors' guaranty-fund act became effective in 1911.

The argument made in defense of the action of the bank commissioner is that, by suing the bank officers on their statutory liability, plaintiff elected a remedy inconsistent with collection of his deposit out of assets of the bank and out of the guaranty fund. The argument is based in part on the following premise:

"It is very plain from the reading of section 584 and the following section 585, that it was the purpose and intent of the legislature to give the right to a patron of the bank, who offered his money for deposit, when the officers knew that the bank was in a failing condition, to say that such money should not be treated as a deposit in the bank, in the sense in which the word deposit is ordinarily used in reference to money placed in a bank, but that such money has been wrongfully and unlawfully appropriated by the wrongful action of the officers and managers of such bank."

The premise is unsound. The officers' liability statute has no bearing whatever on the privilege of a bank patron to elect not to treat his money as an ordinary deposit. The statute deals with depositors, and the suit which may be brought is for recovery of deposits. The relation of a bank to a depositor is that of debtor and creditor. The money deposited becomes property of the bank, whose obligation is to pay the depositor's checks on demand. Without a statute, the bank alone is liable to the depositor. Without disturbing this relation, the statute extended liability for deposits to officers, and while the statute is compensatory (*Frame v. Ashley,* 59 Kan. 477, 53 Pac. 474), the underlying purpose was to insure constant and vigilant watchfulness over conduct of the bank's affairs. (*Forbes v. Mohr,* 69 Kan. 342, 346, 76 Pac. 827.)

It is true that one who has placed money in a bank after it has become insolvent may claim the fund, not as a deposit, but as a trust fund. Because of the fraud committed in taking the money, the claimant may assert that title did not pass and the relation of debtor and creditor did not arise. In adopting such an attitude, the

Ramsey v. Bank Commissioner.

claimant denies he was a depositor, renounces participation in dividends out of assets, and necessarily renounces claim on the guaranty fund; but the privilege of taking such an attitude was not conferred by the officers' liability statute, and exists wholly independent of that statute, which, in as plain words as the English language affords, gives the depositor, as such, a remedy to recover his deposit, as such.

The action against the bank officers was based on their liability created by the statute, and counsel for the bank commissioner argue generally that the commencement of that action is not compatible with the depositor's claim on assets of the bank, and, in default of sufficient assets, on the guaranty fund. In the brief it is said:

"The plaintiff has the right to say: 'In view of the fact that my deposits were taken unlawfully and illegally by the bank through its officers, I will avail myself of the remedy that the law gives me by reason of such unlawful and criminal action of the officers of the bank, and compel such officers to refund the amount of my deposit, so wrongfully and criminally taken from me.' And this is exactly what the plaintiff did say when he commenced his action in the Butler county district court for the recovery of the money unlawfully taken from him by the officers of the bank. And having taken his position and made his election, the plaintiff should not now or at any other time be permitted to say: 'I will waive the wrongful action of the bank and its officers in accepting my money for deposit in violation of law, and I will permit the money taken from me when the bank was in a failing condition to be treated as a deposit, take my chances with the other depositors and the common creditors of such bank, await the action of the receiver, and later on, the bank commissioner in collecting from the guaranty fund what may be necessary to make up that which the assets of the bank fail to pay out.'"

There are several fallacies in this argument. When plaintiff sued the bank officers, he made no election between recovery from them and recovery from assets and, in default of sufficient assets, from the guaranty fund. Having two remedies, one against assets and the guaranty fund, and one against officers of the bank, he chose to invoke both. The statute did not make the receipt of deposits by the bank during insolvency wrongful action by the bank. Without the statute the patron would claim his money as a trust fund, or he could claim as a depositor. Should he claim as a depositor, he has all remedies the law gives to depositors. In bringing this action for his dividend, plaintiff did not waive liability of the bank officers to make good the amount of his deposit.

Counsel argue that, while plaintiff's suit against the officers is pending, the receiver may pay dividends amounting to fifty per

.cent of the deposit, and that plaintiff may then compromise with the officers and receive seventy-five per cent of his deposit, making one hundred and twenty-five per cent in all. As indicated, the liability of the officers is for compensation only. Plaintiff may have but one satisfaction, but he has' two sources of satisfaction, and he may look to both until he is made whole.

The doctrine of election of remedy has been elucidated by the court many times, from *Smith v. McCarthy,* 39 Kan. 308, 18 Pac. 204, to *Ireland v. Waymire,* 107 Kan. 384, 191 Pac. 304. There must be inconsistency between the remedies to make resort to one prohibitive against subsequent resort to the other, and the inconsistency must lie, not in matter of form, but in matter of substance, involving irreconcilable theories.

Counsel say the exact question was determined in the Ireland-Waymire case, which is true. Waymire was in possession of an automobile. Hill alleged he had converted it to his own use, and brought an action for its value. The theory necessarily was that the automobile had become Waymire's, because Hill could not keep the car and recover its value, too. Subsequently the car was attached as Waymire's by a third person. Hill then dismissed her action, intervened in the attachment suit, and claimed the car as her own. After having invoked a remedy on the theory the car belonged to Waymire and not to her, she could not subsequently invoke another remedy on the theory the car was hers and not Waymire's. In the opinion the court quoted from an earlier case as follows:

"Election goes not to the form but to the essence of the remedy. It applies only where the law supplies to a party two or more modes of procedure, predicated upon inconsistent and conflicting theories. If the remedies afforded be predicated upon consistent theories, the suitor may use one or all of them; there can be but one satisfaction. Where the remedies afforded are inconsistent, the election of one operates as a bar." (p. 387.)

Plaintiff does not contradict himself as Hill did. He does not say in one action that title to his money passed to the bank, and in the other that it did not. He does not say in one action that the bank became his debtor, and in the other that it did not. He does not base one action on the theory the bank is liable to him, and the other on the theory it is not. He does not base one action on the theory the officers are liable to him, and the other on the theory they are not. The basis of his claim is the same in both proceedings. He was a depositor in the bank, title to the deposit passed to the

bank, it became his debtor, and he has the remedies of a depositor against it. Misconduct of the officers of the bank induced this relation, and he has the perfectly consistent, supplemental statutory remedy against them for the amount of his deposit.

The Ireland-Waymire case is conclusive upon another subject. In electing remedies, it is the first decisive step that counts, and if there were any soundness in the bank commissioner's position that remedy against him is inconsistent with remedy against the officers, the officers alone could complain. When plaintiff proved his deposit and obtained a certificate entitling him to interest, dividends, and participation in the guaranty fund, he made his election between sources of reimbursement for his deposit, and the present action is consistent with that election.

It is not necessary to review the authorities, first, because they are all in harmony with the Ireland-Waymire case, and second, because the statute itself recognizes the privilege of plaintiff, to sue the bank officers. In case the guaranty fund should be drawn upon to take up any balance due on plaintiff's certificate, the statute makes the bank commissioner assignee of plaintiff's right of action against the officers to the extent the guaranty fund has been depleted:

"Whenever the bank commissioner shall have paid any dividend to the depositors of any failed bank out of the bank depositor's guaranty fund, then all claims and rights of action of such depositors so paid shall revert to the bank commissioner for the benefit of said bank depositor's guaranty fund, until said fund shall have been fully reimbursed for payments made on account of such failed bank, with interest thereon at three per cent per annum." (Gen. Stat. 1915, § 598.)

The argument relating to impropriety of permitting resort both to assets and to officers' statutory liability, is repeated in support of the proposition the plaintiff has waived something. Waiver is correctly defined as intentional abandonment or relinquishment of a known right. So far as this record discloses, plaintiff has not intentionally let go of anything which might help him to get his money, and the law does not impute to him intention not to ask for dividends because he sued the bank officers.

The bank commissioner says it is unfair to general depositors that those who became depositors when the bank was insolvent should have a remedy not available to others. If so, the legislature must make the correction, not the court. The officers' liability stat-

ute, however, was not designed to be discriminatory. The primary purpose was to insure such careful oversight of the bank's affairs that the reception of deposits after insolvency would not occur. It is not perceived that general depositors suffer by having the bank's assets saved to them to the extent bank officers pay and, as indicated, the bank officers' liability becomes a resource for reimbursement of the guaranty fund.

It is said the guaranty fund act applies to deposits not otherwise secured. It is conceded the officers' liability statute does not of itself constitute security, but it is said one who invokes the statute should be estopped from saying he is not secured. Relevancy of estoppel to the argument is not apparent. Plaintiff has other security, or he has not. If he may not participate in the guaranty fund, it is because he has other security, and not because he is estopped from denying the fact. The concession referred to was wisely made. The officers' liability statute does not afford other security to a depositor, within the meaning of the guaranty fund act, and realization on the statutory liability is not realization on other security. The other security contemplated by the statute is contract indemnity taken by a depositor, indicating a purpose not to depend wholly upon the relationship created by deposit of money. The subject, however, is not material, because plaintiff is not now demanding anything from the guaranty fund.

Finally, it is said the writ may not issue because plaintiff has a plain and adequate remedy at law (Gen. Stat. 1915, § 7647). That limitation on employment of the remedy of mandamus has no application here. A depositor has three resources for payment of his deposit: what may be called the bank fund, derived from assets and double liability of stockholders; the guaranty fund; and the statutory liability of bank officers. The first two are administered by the banking department of the state government, and the depositor has no remedy whatever whereby he may secure benefit of those funds except by action against officers of the department. Assuming the suit against the bank officers might be successful, that suit is no remedy for the withholding of a dividend out of assets. Payment of the dividend is an act enjoined by law as a duty resulting from office. The officers may not be sued for the money, and performance of the act may be compelled by mandamus.

The writ is allowed.