No. 26,315.

THE RAMSEY PETROLEUM COMPANY, *Appellee*, v. E. F. ADAMS, C. L. KING, C. L. HARRIS, Executor of the Last Will and Testament of T. A. KRAMER, Deceased, A. B. EWING, L. D. HADLEY, H. F. FERRY, and G. W. LYON, *Appellants*.

No. 26,316.

G. L. RAMSEY et al., *Appellees*, v. *Same Appellants*.

No. 26,317.

W. S. EXLEY, *Appellee*, v. *Same Appellants*.

No. 26,318.

THOS. HUTTON et al., *Appellees*, v. *Same Appellants*.

No. 26,319.

J. H. WAGNER, *Appellee*, v. *Same Appellants*.

No. 26,320.

C. C. FETTY, *Appellee*, v. *Same Appellants*.

No. 26,321.

W. O. JAMES, *Appellee*, v. *Same Appellants*.

No. 26,322.

BERT FROST et al., *Appellees*, v. *Same Appellants*.

No. 26,323.

BERT FROST et al., *Appellees*, v. *Same Appellants*.

No. 26,324.

M. R. CHASTAIN, *Appellee*, v. *Same Appellants*.

No. 26,325.

ALICE RAMSAY, *Appellee*, v. *Same Appellants*.

No. 26,326.

G. L. RAMSEY, *Appellee*, *v. Same Appellants*.

No. 26,327.

R. H. RAMSEY, *Appellee*, v. *Same Appellants*.

No. 26,328.

A. E. LLOYD, *Appellee*, v. *Same Appellants*.

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Reception of Deposits After Insolvency—Liability of Officers—Constitutionality of Act.* In the statute (R. S. 9-163, 9-164) fixing liability of officers and directors for the unlawful reception of deposits by an insolvent bank under their control, neither the due process clause of the federal constitution nor the state constitutional guaranty of the right

1. Constitutional Law, 12 C. J. § 1008; Juries, 35 C. J. § 170; 22 L. R. A., n. s., 266; 3 R. C. L. 490.

Ramsey Petroleum Co. v. Adams.

to a jury trial is violated by the statutory declaration that upon failure of any officer or director to examine the bank, he shall be held to have had knowledge of the insolvency of the bank or that it was in failing condition at the time the deposits were unlawfully received by the bank.

2. SAME—*Reception of Deposits After Insolvency—Prima Facie Evidence of Knowledge of Insolvency—Constitutionality of Act.*  The constitutional proposition that the legislature may not declare that certain facts shall be *prima facie* evidence of other facts to which they bear no fair relation or concerning which they have no inherently probative force is not violated by a statute (R. S. 9-164) which provides that where deposits have been received or debts incurred by a bank which was insolvent or in failing condition, such fact shall be *prima facie* evidence that the officers, agents and managers of the bank had knowledge of the bank's infirm condition and consented to the deposit or the creation of the debt.

3. SAME—*Insolvency—Liability of Officers and Directors—Constitutionality of Act.*  In a series of actions by depositors of a failed bank to subject its officers and directors to liability for the bank's unlawful reception of plaintiffs' deposits while the bank was insolvent or in failing condition, the pleadings examined, and held that plaintiffs' demurrers to so much of defendants' answers as relied on the unconstitutionality of the statute (R. S. 9-163, 9-164) as a defense to plaintiffs' petitions were properly sustained.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed December 5, 1925. Affirmed.

*C. L. Harris, C. A. Leland, L. J. Bond, A. L. L. Hamilton, R. C. Woodward, J. B. McKay,* all of El Dorado, *Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, *A. C. Malloy, R. C. Davis* and *Warren H. White,* all of Hutchinson, for the appellants.

*John J. Jones,* of Chanute, *B. R. Leydig, K. M. Geddes* and *E. W. Grant,* all of El Dorado, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: These fourteen actions were brought by depositors of the defunct Butler County State Bank, seeking to recover from the officers and directors of the bank the several amounts of their deposits under the provisions of the statute of 1879. (R. S. 9-163, 9-164.)

Each plaintiff alleged that he was a depositing patron and customer of the Butler County State Bank; that the defendant, C. L. King, was an officer, director and president of that bank in March, 1923, and for some months prior thereto; that defendant, H. F. Ferry, was an officer, director, vice president and cashier of the bank during the same interval; that defendant, L. D. Hadley, was

2. Constitutional Law, 12 C. J. § 1008; Juries, 35 C. J. § 170.  3. Banks and Banking, 7 C. J. § 168.

an officer, director and assistant cashier of the bank at and about the same time; that the defendants, A. B. Ewing, G. W. Lyon and T. A. Kramer, were directors of this bank in March, 1923, and for three months prior thereto; and that defendant, E. F. Adams, in March, 1923, and for more than two years prior thereto, had held herself out to be a vice president and director of this bank, and had so represented herself to the bank's customers.

Each plaintiff alleged that in March, 1923, and for more than six months prior thereto the Butler County State Bank was insolvent and in failing circumstances, and that these facts were known to these defendants, or by an examination into the affairs of the bank, which it was their duty to make, they could have ascertained that fact; and that during this period of the bank's insolvency, which was known to defendants or would have been known by them if they had performed their statutory duty to examine into its affairs, such plaintiff, not knowing of the insolvency and failing circumstances of the bank, made certain specified deposits therein whereby the bank became indebted to the plaintiff.

Other pertinent allegations narrated the closing of the bank by the state bank commissioner, its suspension of payments, and the consequent liability of the several defendant officers and directors under the statute cited above.

To these petitions each defendant demurred. Their demurrers were overruled, and they separately answered, pleading various defenses, one of which included a challenge of the constitutionality of the statute of 1879 on which the actions were based, on the ground that it violates the due process clause of the federal constitution (fourteenth amendment), and the right to a jury trial on a justiciable issue of fact (Bill of Rights, Kan. Const., § 5).

Demurrers were filed to these answers. These were overruled so far as they were aimed at various pleaded defenses of no present concern, and were sustained so far as they were directed at the defense based upon the unconstitutionality of the statute.

Hence these appeals.

The statute, in part, reads:

"An act making officers of banking institutions responsible for the reception of deposits or the creation of debts, when such bank is insolvent or in a failing condition.

"SECTION 1. It shall be unlawful for any president, director, manager, cashier, or other officer of any banking institution, to assent to the reception of deposits or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent or in failing circumstances;

Ramsey Petroleum Co. v. Adams.

and it is hereby made the duty of every such officer, agent or manager of
such banking institution to examine into the affairs of the same, and, if possi-
ble, know its condition. And upon failure of any such person to discharge
such duty he shall, for the purpose of this act, be held to have had knowledge
of the insolvency of such bank, or that it was in failing circumstances. Every
person violating the provisions of this section shall be individually responsible
for such deposits so received, and all such debts so contracted: *Provided,*
Any director who may have paid more than his share of the liabilities men-
tioned in this section may have the proper remedy at law against such other
persons as shall not have paid their full shares of such liabilities.

"Sec. 2. In all suits brought for the recovery of the amount of any deposits
received or debt so created, all officers, agents or managers of any such bank-
ing institutions, charged with having so assented to the reception of such
deposit, or the creation of such debt, may be joined as defendants or proceeded
against severally; and the fact that such banking institution was so insolvent
or in failing circumstances at the time of the reception of the deposit charged
to have been so received, or the creation of the debt charged to have been so
created, shall be *prima facie* evidence of such knowledge and assent to such
deposit or creation of such debt on the part of such officer, agent or manager
so charged therewith." (Laws of 1879, ch. 47; R. S. 9-163, 164.)

In the forty-six years' existence of this statute, it has infrequently
required the attention of this court, and in those instances its con-
stitutionality was not questioned. (*Frame v. Ashley,* 59 Kan. 477,
53 Pac. 474; *Forbes v. Mohr,* 69 Kan. 342, 76 Pac. 827; *Ramsey v.
Bank Commissioner,* 115 Kan. 212, 222 Pac. 117; *Barret, Receiver,
v. Skalsky,* 118 Kan. 162, 233 Pac. 1043.) It will be noted that the
avowed purpose of the statute as expressed in its title was to make
bank officers responsible for the reception of deposits by an insol-
vent or failing bank under their control. To that end the statute
declares it to be the duty of certain named officers and directors to
examine into its affairs so as to ascertain its condition. It also
declares it to be unlawful for any officer or director to assent to
the bank's receiving deposits or incurring debts after he becomes
aware of its financial infirmity. And when a bank has received
deposits and incurred debts while it was in an insolvent or failing
condition, the statute declares such fact to be *prima facie* evidence
of the bank officer's or bank director's delinquency and his conse-
quent responsibility—that he either did know of the bank's insolvent
condition and assented to the unlawful reception of the deposit and
the incurring of the debt, or that he was negligent in not making a
proper examination of the bank so that he might learn its true
condition and take proper steps to stop such unlawful practices.
The statute recognizes the possibility that even a diligent and duti-

ful examination might not disclose the bank's insolvent or failing condition to every individual officer or director, and as to each of these who have examined the bank at reasonable intervals the fact that deposits were unlawfully received and debts unlawfully created constitutes merely *prima facie* evidence of knowledge and assent against the officer or director against whom a wronged depositor or creditor seeks to enforce the statutory liability. But the statute shows no such leniency towards bank officers and directors so neglectful of their duty that they made no examination of the bank at all. Unless there is some constitutional flaw in the statute, the latter are held for the consequences flowing from their delinquency. As to them the consequence is the same as if they had known the condition of the bank and had assented to the continued unlawful reception of deposits and the unlawful incurring of debts. They are simply charged as a matter of law with that knowledge which a compliance with their statutory duty would have disclosed to them.

Is this imposition of liability for negligence and official delinquency at odds with the fourteenth amendment? Defendants so contend; they cite texts and authorities, including our own cases, like *Railway Company v. Simonson,* 64 Kan. 802, 70 Pac. 881, and *Petersilie v. McLachlin,* 80 Kan. 176, 101 Pac. 1014, to the effect that due process of law is denied by a statutory declaration that such and such facts shall be conclusive proof of something required to be established in a judicial proceeding when such facts are not of such inherently probative character. With this general doctrine of the cases relied on there need be no quarrel; certainly this court has no disposition to disturb legal principles of such fundamental worth. (12 C. J. 1233-1234; 6 R. C. L. 462; 2 Wigmore on Evidence, 2d ed., 1016 *et seq.*) But we cannot agree that the statutory provision under present scrutiny is justly subject to the criticism leveled against it. The provision reads: "And upon failure of any such person [officer or director] to discharge such duty [to examine the bank] he shall, for the purpose of this act, be held to have had knowledge of the insolvency of such bank, or that it was in failing circumstances." This is not an arbitrary edict of the legislature making evidence out of facts which are without inherent evidential significance, nor an arbitrary perversion of the rules of evidence. It is rather a statutory declaration of substantive law. We have

many such rules of substantive law touching civil liability. Analogous liabilities are imposed by substantive law, even where there is little or no element of actual wrongdoing or negligence on the part of those subjected thereto. Such is the plight of stockholders of an insolvent bank. So, too, a business partner is liable as a matter of law for many acts and delicts of his copartner or of his servant, although such acts or delicts may have been committed without his knowledge or assent, and even in violation of his wishes and instructions. Nothing is more common than the imposition of liability upon a principal for the acts, contracts or torts of his agent when done under color of his agency, although the principal may have been in no sense morally culpable for such acts. In 2 Wigmore on Evidence, 2d ed., 1055, it is said:

"Can the legislature prescribe a rule of conclusive evidence?

"On the one hand, so far as a so-called rule of conclusive evidence is not a rule of evidence at all, but a rule of substantive law, it is clear that the legislature is not infringing upon the prerogative of the judiciary to determine the truth of a fact in issue. For example, a rule that an indorser's liability can be fixed by showing a notary's certificate of protest is not necessarily a rule making the certificate conclusive evidence of demand and notice, but a rule of the law of negotiable instruments; because the law might be that no demand or notice at all was necessary for fixing an indorser's liability; and thus, to require a notary's certificate is merely to require a formal official instrument irrespective of its truth, i. e., something halfway between requiring actual notice and requiring no notice at all. Again, to make a rule that as between successive grantees the recorder's certificate of the time of filing deeds shall be conclusive, is not to make a rule of evidence, but merely to provide in the law of land transfer that a deed found to be recorded as of a prior date shall take effect against a deed found to be recorded as of a subsequent date, irrespective of the actual time of entry and record. In such cases, and countless others, the use of the term 'conclusive evidence' cannot conceal the true nature of the rule as a rule of substantive law, making a certain right or obligation depend upon the existence of a certain official writing irrespective of its truth. Such statutes do not in any way infringe the prerogative of the judiciary to satisfy itself by inquiries of fact, because they make no rule of evidence at all."

In *Orient Insurance Co. v. Daggs,* 172 U. S. 557, 43 L. Ed. 552, the supreme court had under consideration a Missouri statute which declared that in all suits brought upon policies of fire insurance, thereafter issued or renewed, the insurance company—

"Shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured, the

measure of damages shall be the amount for which the same was insured, less whatever depreciation in value below the amount for which the property is insured the property may have sustained between the time of issuing the policy and the time of the loss."

It was contended that this Missouri statute violated the provisions of the fourteenth amendment, and particularly that it took away a fundamental right and precluded a judicial inquiry of liability by a conclusive presumption of fact. The court said:

"The cases cited by plaintiff in error, which hold that the legislature may give the effect of *prima facie* proof to certain acts, but not conclusive proof, do not apply. They were not of contract nor gave effect to contracts. It is one thing to attribute effect to the convention of parties entered into under the admonition of the law, and another thing to give to circumstances, maybe accidental, conclusive presumption and proof to establish and force a result against property or liberty." (p. 566.)

It seems that the doctrine declared in the case just cited settles the main point for which appellants contend. The preclusion of a defense based upon their want of knowledge of the bank's insolvency or failing circumstances when they wholly neglected their official and statutory duty to examine the bank, is a rule of substantive law and not merely a rule of evidence. And while the precise constitutional question here raised has not hitherto been squarely determined, the legal principle underlying this statutory liability has been considered and upheld many times. (*United Society of Shakers v. Underwood, &c.*, 72 Ky. 609; *Horn Silver Mining Co. v. Ryan*, 42 Minn. 196; *Ellis v. Mercantile Co.*, 103 Miss. 560, and citations; *Campbell, Receiver, v. Watson*, 62 N. J. E. 396, and citations; 1 Bolles' Modern Law of Banking, 183, *et seq.*; 1 Morse on Banks and Banking, 5th ed., 298.) In Magee on Banks and Banking, 3d ed., 98, it is said:

"A director, being a trustee of the property of a corporation, is held while acting as such, especially in savings banks, to a strict account. It becomes his duty to take part in all proceedings held or acts done; while he is present at directors' meetings, he cannot close his eyes and remain passive while his codirectors are wasting by improvident investments the property and moneys of the bank. It is his duty not only actively to oppose measures passed by his associates which are unlawful, but also to invoke the law to restrain its continuance, and through the aid of the law seek to set aside such actions, and recover property and money which has been unlawfully disposed of in such cases.

"The law imposes certain duties which are obligatory and from which a director cannot be excused. A failure to perform duties which the laws im-

pose makes the director who willfully neglects such duty, after being fully qualified in office, liable in civil damages, to the person, or persons, injured by such gross neglect.

"A director cannot excuse himself from statutory duties, and grossly ignore the law, which definies the obligation resting upon him.

"The directors are liable in failing to perform duties required and imposed by the statute, but it must be inferred that their acts were unintentional.

"Where the position is accepted and capital is entrusted to the care, management or investment under the direction of a board of directors, whose duties are defined, and they wholly, willfully and negligently fail in the performance of their duties to such an extent as, through such negligence, results in loss, they become civilly liable."

In our own early case, *First Nat. Bank v. Drake*, 29 Kan. 311, 327, it was said:

"The directory, as has been said, is the visible representative of the bank. . . . The . . . depositors—the persons who are pecuniarily interested in the safe management and prosperity of the bank—look to the directors as the chosen guardians of their interests, and have a right to demand of them that they watch over all those interests in their minute details. So that all of these parties have a right to assume that the directors know all the transactions, business, and condition of the bank, because they ought to know them, and because otherwise they do not discharge their full duties to these various parties."

The court holds that the statute under consideration does not violate any provision of the federal constitution; and in view of what we have already said the same conclusion must be reached touching its validity when tested by section 5 of the bill of rights of our state constitution, which guarantees the right to a jury trial in common law actions for the recovery of money or of property. In holding derelict bank officers and bank directors to the legal consequences attaching to actual knowledge of and actual assent to the unlawful receipt of deposits and creation of debts by an insolvent or failing bank under their charge, when they should have known the bank's condition and should have taken the proper steps to terminate its corporate wrongdoing, the court holds that the defendant officers and directors cannot save themselves from liability behind a screen of ignorance resulting from their neglect of what it was their duty to know and their duty to do, and the statute does not offend against any provision of the state constitution.

It is also argued by defendants that R. S. 9-164, which is the second section of the act of 1879 under consideration, also offends

against the same provisions of the state and federal constitutions, where it declares that the reception of deposits or the creation of debts by a bank in failing circumstances shall be *prima facie* evidence of knowledge and assent thereto on the part of an officer, agent or manager charged with responsibility for the proper conduct of the banking corporation. It is argued that there is not a sufficiently fair relation or connection between such evidential facts as declared by the statute and the main ultimate fact to be judicially ascertained—whether the officer, agent or manager actually did know of the bank's financial unsoundness. We cannot agree to this contention. We think the matters, declared in this statute to be *prima facie* evidence of the ultimate fact, have inherently probative significance of a highly potent character. (*State v. Nossaman,* 107 Kan. 715, 721, 193 Pac. 347; 12 C. J. 1233; 6 R. C. L. 462 *et seq.*) Of course, where there has been no total disregard of statutory duty to examine the bank, where there has been some effort made by the defendant officer, agent or manager to comply with "the duty to examine into the affairs of the same, and, if possible, know its condition," the reception of deposits or creation of debts, does not necessarily result in a personal liability against such officer, agent or manager. He may be able to show his freedom from fault. He may be able to show that it was not reasonably possible for him to ascertain the true condition of the bank, although he had diligently examined into its affairs with reasonable frequency. In *Forbes v. Mohr,* 69 Kan. 342, this court said:

"By the second clause of section 65 [R. S. 9-164] as above stated, it is made the positive duty of the officer to examine into the affairs of the bank. This duty stands out clearly by itself. An examination by the officer is required, regardless of what it may show. It is to be such an examination in frequency, thoroughness and accuracy as will, with reasonable certainty, acquaint him with the condition of the bank. A director may not excuse himself from liability to a depositor by saying that he was relying upon the honesty of the cashier whom he had employed, and hence made no examination of the affairs of the bank; or that it would have been useless for him to make such examination because the peculations of the cashier were of such character, and carried on and concealed with so skillful a hand, that he, not being an expert, could not have discovered them. The legislature undoubtedly thought to lay upon those in active control of banks the restraining influence of reasonably frequent and thorough examinations of their affairs. The qualifying phrase, 'if possible,' has application to the discovery of wrong conditions by reasonable examination, and does not serve to excuse the want of all examination by an incompetent director. In short, the requirement of the statute is that the examination be made, and be of such

character as would result in a knowledge of the condition of the bank if such knowledge could possibly, within the range of reasonable frequency and thoroughness, be obtained.

"We do not think that the plea of a director, sought to be charged with liability under the quoted states, that he made no examination, but that if he had, it would not have been possible for him to ascertain the failing condition of the bank, is sufficient to excuse him from the liability imposed by law." (pp. 347-348.)

The court has noted the other defenses set up in the answers of the various defendants, but as the plaintiffs' several demurrers to those defenses were overruled by the trial court, we have no present concern therewith.

The judgment is affirmed.