No. 32,140

MARY PIROTT and SUSAN PIROTT, *Appellees*, v. J. B. HEINEN, *Appellant.*

(42 P. 2d 577)

Opinion filed April 6, 1935.

*R. L. Hamilton,* of Beloit, *Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellant.

*A. Harry Crane, Ward D. Martin* and *Erle W. Francis,* all of Topeka, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action under R. S. 9-163 by two depositors against a director of a bank found to have been insolvent and in failing circumstances at the time the deposit was made. The jury found the director liable under the statute, and he appeals, specifying many errors.

This is the second trial of the case. In the first trial the judgment was reversed and a new trial ordered mainly because of the giving of certain instructions. The opinion is reported in 137 Kan. 186, 19 P. 2d 723. A rehearing was granted, and in the opinion thereon, reported in 138 Kan. 319, 26 P. 2d 453, details as to instructions requested and refused and evidence admitted and excluded were exhaustively treated. On the second trial the rulings and reasons assigned in these two opinions were generally observed, and the case was so greatly narrowed in its scope and application to spe-

cific facts that the serious feature now appears to be that possibly a part of the duty of the jury as to a finding of fact, necessary to liability, may have been covered as a matter of law in the instructions.

The trial court rightly held the burden of proof was on the defendant, which he assumed. It was admitted in advance that the bank was actually insolvent on the 28th day of February, 1930, when the deposit was made for the plaintiffs, and that it closed its doors on account of insolvency on March 19, 1930, and the defense of the bank director was that he did not know of the fact that it was insolvent or in failing circumstances and that by his frequent examinations into its affairs it was not possible for him to know its insolvent condition.

The part of the statute under which this action was brought, R. S. 9-163, is as follows:

"It shall be unlawful for any president, director, manager, cashier, or other officer of any banking institution, to assent to the reception of deposits or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent or in failing circumstances; and it is hereby made the duty of every such officer, agent or manager of such banking institution to examine into the affairs of the same, and, if possible, know its condition. And upon failure of any such person to discharge such duty, he shall, for the purpose of this act, be held to have had knowledge of the insolvency of such bank, or that it was in failing circumstances. Every person violating the provisions of this section shall be individually responsible for such deposits so received, and all such debts so contracted."

There was no evidence introduced except by the defendant, although liberal cross-examination was allowed. The motion of plaintiffs at the close of the evidence of defendant for an instructed verdict was overruled, but the case was submitted to the jury, which, in addition to its verdict for plaintiffs, answered a number of special questions submitted by the court.

The whole trouble was brought about by a dishonest cashier who has since admitted his guilt and is now suffering the usual punishment therefor. He was brought back and testified in the case, frankly admitting just what he did and how he did it, including the manipulations of the records, the falsifying of adding machine totals and forgeries.

There were over $50,000 of forged notes included in the assets of the bank, and the total of the actual deposits, as shown by the adding machine through the manipulation of it, was about $41,000

less than the correct total. The failure of the defendant, a director of the bank, to discover or detect either of these two impairing features appeared to be the main grounds for his not being informed as to the actual insolvent condition of the bank. The testimony of the cashier was that both these features of deception had been followed for a long time.

The evidence further shows that these adding-machine totals that were submitted to the directors were not shown to the bank examiners, who always made their own totals, but about $41,000 worth of depositors' accounts were regularly removed by the cashier from the alphabetical list of depositors' balances whenever the examiners came. The receiver, the defendant, and other bank directors testified to the condition in which they found the bank, its notes, records and accounts after it was closed and further investigation was made. They stated the particular difficulties in detecting that the notes had been forged and that the totals of deposits had been reduced by the manipulation of the adding machine.

Appellant complains especially of the giving of instructions 10 and 11, which are as follows:

"10. You are instructed that the directors may, and indeed should collaborate in examining the bank; but, of course, if a director does not attend the meetings of the board of directors and does not collaborate with them in examining the bank, then to avoid civil liability in a case like this his independent examinations must be of such frequency, accuracy and thoroughness that he will 'if possible' know its condition. In making such examinations, if the defendant, Heinen, was relying upon his independent examinations, to meet the requirements of law, he should have carefully checked and added the depositors' accounts and the notes, to ascertain the true status of the bank's liabilities and likewise to have ascertained if the bank's assets were sufficiently intact to meet those liabilities; in short, if possible, to know its condition. It is no defense for Mr. Heinen to say that he implicitly relied upon the supposed honesty of the cashier, Mr. Buist, and that therefore he did not meet the above requirements, nor make the required examinations and additions. Nor is it a defense for Mr. Heinen to claim that it was useless for him to make such examination because the manipulations of the cashier, Buist, were of such character, carried on and concealed with so skillful a hand that he, Heinen, not being an expert could not have discovered them.

"11. You are further instructed that if the defendant relied upon the figures and additions made by the cashier, Buist, and such additions were incorrect, and such defendant did not add such figures or make any attempt to learn if such additions were correct, then and in that event the defendant failed in his statutory duty, and your verdict should be for the plaintiffs and against the defendant in the amount with interest as heretofore mentioned."

The first sentence, or first third of instruction 10, is virtually copied from the ópinion on the rehearing at the top of page 320. The latter part of the next sentence, or the middle third, of this instruction, is substantially the same language as given in the original opinion near the bottom of page 191 in speaking of what the statute must have contemplated; the earlier part of this middle third states only the difference between an examination of the affairs of the bank in company with the other directors and an examination by one director alone. The last third of this instruction, consisting of two sentences, is virtually copied from page 348 of the opinion in the case of *Forbes v. Mohr*, 69 Kan. 342, 76 Pac. 827, except that there is added to the statement that it is no defense that the director relied upon the honesty of the cashier and therefore did not make the required examination, the two words "and additions," which are not in the Forbes case, *supra*. This apparently makes the verification of the addition a positive requirement of the statute.

As above quoted, the statute when enacted must have contemplated that depositors' accounts should be carefully checked and added. This is quite different from making the failure to make such addition the basic feature of liability. Instruction 11 tells the jury as a matter of law that if the director did not add the figures in the list furnished by the cashier, and learn if such addition was correct, he failed in his statutory duty and the verdict should be for the plaintiffs. There was nothing under this instruction left for the jury to do, because it was admitted by the defendant on the witness stand that he had not made such additions. If such is the law of the case then under the admission of the defendant the motion of the plaintiffs for a peremptory instruction should have been sustained and the jury so instructed.

There surely are many ways of verifying the financial affairs of a bank, and if there are several, can it be said as a matter of law that because of the failure to use a certain particular one of them, liability exists? The court in the original opinion in this case, on page 191, said concerning a certain finding of the jury:

". . . neither the trial court nor this court should say as a matter of law that the evidence touching the deceitful manipulation of the adding machine and consequent falsification of the amount of deposits was so subtle that it was not reasonably possible for defendant to discover that the discrepancy of $41,000 existed."

Neither could the court say the contrary as a matter of law. These are matters for the determination of the jury. The failure of the defendant to add such figures, or make any attempt to learn if such additions were correct, was certainly competent evidence for the consideration of the jury in determining whether or not under the statute the defendant officer of the bank had performed his duty by examining into the affairs of the bank so that, if possible, he might know its condition. It was a proper piece of evidence for the consideration of the jury, and with or without further evidence of examining into the affairs of the bank, or failure to do so, the jury might determine the liability of the defendant under the statute. We think both these instructions invaded the province of the jury and conclude a proposition that is not a matter of law. We might have some doubt as to the purpose and intention of the trial court but for an expression made in overruling the motion for a new trial. We think the giving of instructions 10 and 11, and particularly the latter, constituted error for which a new trial must be granted, and, as stated in the opinion in the former trial, the new trial should be *de novo* notwithstanding the answers to the special questions under rules prevailing in other lines of cases might eliminate some features of the case.

We have carefully examined all the other specifications of error, and while we find merit in some of the points urged and stressed, none of them appear to be necessary to be here set out or particularly discussed. The opinion in the rehearing of the first trial of this case was largely devoted to matters that might affect or help in the retrial of the case, and it would be difficult to amplify or enlarge upon the ideas there expressed, as a consideration of the remaining points in this case would necessarily be concerning similar topics and subject.

The judgment is reversed and a new trial ordered.