**LAWSON–RICHARDS, Inc., et al. v. BLALOCK LUMBER CO.**

No. 7416.

Court of Civil Appeals of Texas. Austin.

Jan. 29, 1930.

Rehearing Granted April 16, 1930.

Rehearings Overruled April 30, 1930, and May 7, 1930.

Roberts, Monteith, Baring, & Wilson, of Houston, for appellants.

H. L. Nicholson, of Houston, for appellee W. L. Macatee & Sons.

Harry Holmes, of Houston, and W. W. Kirkpatrick, of Houston, for appellee Blalock Lumber Co.

McCLENDON, C. J.

This cause was tried to the court without a jury. From the court's findings and the statement of facts we make the following statement:

Conrad H. Lawson had for many years been engaged in buying and selling cement, sand, and gravel in Houston, and had frequently made purchases of W. M. Macatee & Sons, to whom we will refer as Macatees. Lawson ceased business for a time about 1926, and later formed the Lawson-Richards, Inc., corporation, of which he was president, and under which he conducted the same business. Purchases from Macatee were continued, but the account was carried in the name of Lawson under circumstances which made Lawson personally liable, although the purchases were for the corporation. About August, 1927, this account showed an indebtedness to Macatees of approximately $2,000, which was still owing in March, 1928. Lawson-Richards, Inc., had a contract to furnish Belgium cement for a building in Houston known as Richey Tabernacle. On March 8, 1928, Lawson ordered by telephone from Blalock Lumber Company three cars (900 barrels) of Portland cement, at $2.50 per barrel, invoiced at 30 days net with a discount of 10 cents per barrel if paid in ten days. Lawson represented to Blalock, the company's president, that the cement was immediately needed to fill a contract Lawson-Richards, Inc., had to furnish cement on the Richey Tabernacle; that payment would be made out of the money received from its sale; and that the bill would be discounted under the ten-day privilege. On the afternoon of March 8th the cement was delivered on the tracks to Lawson-Richards, Inc., and on the following day, or the day after, it was delivered by Lawson-Richards, Inc., to Macatees at $2.30 per barrel, in settlement of the above account. On March 19th, Lawson-Richards, Inc., executed a note in favor of Blalock Lumber Company for the $2,250 (contract price of cement without discount) due April 1, 1928. This note was taken upon the representation by Lawson to Blalock that he was ill and had been unable to make collections. The Blalock Company did not then know that the cement had not been used in the Richey Tabernacle, but ascertained that fact on or shortly prior to March 28, 1928, on which date this suit was filed by Blalock Company against Lawson, Lawson-Richards, Inc., and Macatees. The petition alleged that the cement was obtained by fraud and sought to recover the cement, and in the alternative its value as for conversion. The allegations of fraud, in substance, were: (1) False representations that the corporation was a solvent going concern with net assets of $5,000; (2) that the corporation was a "mere pretense" created by Lawson to avoid personal liability for his debts; and that he bought the cement in order to use it to discharge his personal obligation to Macatees; and (3) false representations that the cement was to be used in the Richey Tabernacle under a contract which Lawson-Richey had with the contractors.

The court rendered judgment for plaintiff against Lawson personally, and Lawson-Richards, Inc., for $2,250, and in favor of Macatees.

From this judgment Lawson and Blalock Lumber Company have each appealed.

The court's judgment is predicated upon findings to the effect that the debt to Macatees was that of Lawson-Richards, as well as of Lawson; that at the time of the purchases by Lawson "he did not have a fraudulent intent not to pay for said cement"; and that "title to said cement passed out of plaintiff and into Lawson-Richards, Inc., at the time of the sale." The court's conclusions of law follow:

"From the foregoing findings of fact, I conclude, as a matter of law, that because there was not present a fraudulent intent on the part of C. H. Lawson, at the time he ordered said cement, not to pay therefor. That the title to said cement passed to Lawson-Richards, Inc., and that, therefore, plaintiff would not be entitled to recover the possession of said cement from W. L. Macatee & Sons, or to recover from W. L. Macatee & Sons as for conversion of said cement.

"I conclude that under the particular facts of this case, that Conrad H. Lawson having used said cement to pay his personal obligation, with full knowledge that said cement had not been paid for, and that the plaintiff believed the same was being used in the Richey Tabernacle job, that in order to do exact justice between the parties, the court should subrogate the plaintiff to the cause of action against Conrad H. Lawson, individually, and that plaintiff should have judgment against Lawson-Richards, Inc., and Conrad H. Lawson, for said cement, and judgment has accordingly been so rendered."

Lawson contends that he was entitled to a judgment under the above findings of fact.

We sustain this contention on two grounds:

First, the finding of the trial court that the title passed to Lawson-Richards made plaintiff merely a general creditor of the corporation; and regardless of whether the corporation had a claim against Lawson for disposing of the cement, such claim could not be reached by a general creditor through the process of subrogation. It could only be reached by garnishment, or, in a proper case, by creditor's bill.

Second, the court's findings preclude any right of recovery by the corporation against Lawson because the cement was used to discharge a debt for which as between him and the corporation the latter was primarily liable. Regardless of the relations between Lawson and Macatees inter sese, Lawson was merely lending his credit to the corporation, and if he had personally paid the debt he would have been entitled to reimbursement from the corporation. We see no

escape from either of these conclusions. They are elementary and need no citation of authority. Lumber Co. v. Long (Tex. Civ. App.) 5 S.W.(2d) 162, cited by Blalock Company, is manifestly not in point.

[4, 5] In a supplemental finding of fact the court found that while the account stood in the name of Lawson, and he was liable personally, the purchases were made for the benefit of the corporation. Blalock Lumber Company contend that the supplemental findings should not be considered because filed after the time allowed in the general statutes for filing findings of fact. This point has been decided adversely to this contention by the Galveston Court in Lamm v. Gohlman (Civ. App.) 279 S. W. 552. Independently of this supplemental finding, we think the original finding that both the corporation and Lawson were liable for the account is tantamount to a finding that the account was for the benefit of the corporation. The only theory on which the corporation could be liable at all, since the account stood in the name of Lawson individually, was that it was in fact its account. Blalock Company contest this finding on the ground that it is not supported by the evidence. This contention we overrule. The evidence certainly supports the finding, if it does not in fact conclusively establish it.

The appeal of the Blalock Company is predicated upon assignments which question the sufficiency of the evidence to support the findings and judgment as a matter of law. In this connection it is contended that the evidence conclusively shows fraud in each of the three respects pleaded as above set out.

We have carefully examined the entire statement of facts and conclude that these assignments should be overruled. The sufficiency of the evidence is questioned only as a matter of law, and our jurisdiction to set aside the judgment and grant a new trial in the interest of justice is not invoked.

The testimony of Lawson amply supports the specific finding of the court that he had no fraudulent intention not to pay for the cement when he ordered it.

The court made no finding upon the allegation that Lawson represented that the corporation was solvent, and had net assets worth $5,000. Upon this issue the evidence was conflicting. Blalock testified to the representation and Lawson denied it.

The court specifically found that Lawson did represent that the cement was to be used in the Richey Tabernacle under a contract which the corporation had with the contractors, but there was no finding that this constituted actionable fraud. In order to be such Blalock Company must have relied upon it.

On cross-examination Blalock testified relative to the representation in question:

"If he had not made that statement I would not have sold him the cement. That was the statement on which I sold it to him, and he told me he would pay me out of the money he received. He told me he was a going and solvent concern and had $5,000 net assets. If he had not told me that I would not have sold it to him. That was the inducing fact that led me to make the sale. If it was a solvent and going concern I would not have cared where he sold the cement because I could get my money regardless of where he sold it."

It must be borne in mind that Blalock was an interested witness and the testimony was oral in the presence of the trial judge, to whom exclusively is committed the question of the credibility of the witnesses and the weight to be given to their testimony. This affirmative testimony on Blalock's part as to the inducing cause of the sale could with propriety have been regarded by the trial judge as negativing Blalock's other testimony to the effect that he relied upon other representations, and was sufficient we think to support a finding that he relied solely upon the credit of the corporation in making the sale, and not upon the representation that the cement was to be used in the Richey Tabernacle.

Blalock Company made no request for additional findings, and the only exceptions it made to the findings were that in specific particulars they were contrary to the law and evidence. Under these circumstances, to paraphrase the holding in Cockrell v. Steffens (Tex. Civ. App.) 284 S. W. 608, the finding to the effect that the title passed at the time of the sale was in effect a finding against all the allegations of fraud.

"It is the duty of a party complaining of the inadequacy of findings of fact to request additional or more specific findings; otherwise he may not be heard to say on appeal that such findings are insufficient, particularly if the evidence would have justified a finding against the party who complains of its omission." Texas Jurisprudence, vol. 3, p. 224.

There are a number of facts and circumstances in evidence which raise the issue of fraud on each allegation, and it may be that this evidence can properly be characterized as preponderating in favor of plaintiff. That question, however, is not presented, and we are unable to conclude that the evidence conclusively shows actionable fraud as a matter of law.

The judgment of the trial court against Lawson personally is reversed, and judgment is here rendered in his favor. In other respects the judgment of the trial court is affirmed.

Affirmed in part, and in part reversed and rendered.

On Motion for Rehearing.

We quote from the motion filed by Blalock Lumber Company: "At the outset we desire to say that if this Court's conclusion of

law, that the trial court's erroneous statement of the law, to the effect that the title to the cement passed at the time of the sale, is binding on this Court, though his fact findings show that it did not pass, then this court's disposition of this case is correct."

In this connection two contentions are urged:

(1) That the eighth finding of fact, which reads, "I find that title to said cement passed out of plaintiff, and into Lawson-Richards, Inc., at the time of the sale, to-wit: March 8, 1928," was a mere conclusion of law and not a fact finding.

(2) That the first, second, and third findings of fact embody every essential element of actionable fraud, and therefore establish as a fact that the title did not pass.

We overrule the first contention. The eighth finding is included in the court's findings of fact as a separate and distinct fact finding. It necessarily includes other findings essential to the passing of the title, and therefore excludes actionable fraud. This is in effect the holding in Cockrell v. Steffens (Tex. Civ. App.) 284 S. W. 608, cited in our original opinion, and by analogy is the holding of the Supreme Court in the quotation embodied in Brewster v. Forney, 223 S. W. 175, 177.

The substance of the pertinent portions of the first, second, and third findings is as follows:

(1) That, when Lawson ordered the cement from Blalock Company, he "represented to said Blalock Company that the said cement was needed immediately to fill a contract, which Lawson-Richards, Inc., had to furnish cement on a building job or building known as the Richey Tabernacle, a building then under construction in the city of Houston; and that it would pay the Blalock Lumber Company therefor out of the money received from the sale of said cement, and that said bill would be discounted under the 10-day discount privilege."

(2) "That Blalock Lumber Company, in pursuance thereof did, on March 8, 1928," deliver the cement to Lawson-Richards, Inc.

(3) "That said Lawson-Richards, Inc., did not, in fact, have a contract to furnish said cement to the said Richey Tabernacle."

In our original opinion we held that there was no finding that Blalock Company relied upon the representation in finding No. 1 above. It is contended that the expression "in pursuance thereof" in the second finding embodies a finding to the effect that the representation was relied upon. After a careful examination of the subject and such authorities as we have found, we have reached the conclusion that this contention is correct.

The adjective "pursuant" is defined in the standard dictionaries as follows:

Webster: "Acting or done in consequence or in prosecution (of anything)."

Funk & Wagnalls: "Done in accordance with or by reason of something."

Century: "Done in consequence of or in prosecution of something."

See, also, in this connection, authorities cited in 31 C. J. p. 361, and notes 48 and 49; 4 Words and Phrases, First Series, page 3480; 2 Words and Phrases, Second Series, page 992.

If we substitute for "in pursuance thereof" either "in consequence thereof" (Webster and Century), or "by reason thereof" (Funk & Wagnalls), we have a finding that the representation was made, and that in consequence thereof, or by reason thereof, the cement was delivered. Either of these expressions taken in connection with the context seems to us equivalent to "in reliance thereon."

We have therefore a general finding that the title did pass, and therefore there was no actionable fraud; and at the same time specific fact findings embodying all the elements of actionable fraud. The two findings are therefore contradictory, and will not support a judgment. The holding in Brewster v. Forney, above, is directly in point.

■ If, therefore, we are correct in our construction of the court's findings, it will be necessary to remand the entire case for a new trial, since it conclusively appears, both from the evidence and the court's findings of fact, that the Macatees were not innocent purchasers; they having taken the cement as a credit upon a pre-existing debt.

Our former judgment is set aside, the trial court's judgment is reversed, and the cause remanded for a new trial.

Motion granted; reversed and remanded.

On Further Motion for Rehearing.

Blalock Lumber Company has filed a further motion for rehearing, insisting that the cause should be rendered in their favor instead of remanded upon the ground that the eighth finding of fact is merely a conclusion of the court from other findings, and is therefore not a finding of fact against the existence of actionable fraud in conflict with the specific findings of fact which we held to embrace all of the elements of actionable fraud. A number of cases are cited, and it is urged that Brewster v. Forney, which we held controlling, is not in point.

In order to make our position clear, we hold that the decision in Brewster v. Forney is controlling, and we are bound by it, regardless of the force of the argument in support of the Blalock Company's above contention. It is apparent from the opinion of Judge Kittrell, in the Brewster Case, that the Commission of Appeals took the same view that is now taken by the Blalock Company, and the same arguments were advanced. The question presented there was the con-

struction of a special issue verdict. The suit was for damages for the creation and maintenance of a nuisance. The jury found generally that the erection and operation of the plant complained of was not a nuisance. This finding was based upon an erroneous definition of "nuisance." Under other findings the jury found specifically every fact essential to constitute the operation of the plant a nuisance. The question presented, therefore, was in every essential particular the same as that presented here. We quote from Judge Kittrell's opinion:

"In thus stating our conception of the law, we have not lost sight of the answer of the jury to the fourteenth special issue, *to* the effect that they did not believe the construction and operation of the plant constituted a nuisance.

"That question was immaterial, because answers to the preceding questions would have been, as they proved to be, all-sufficient as a basis for judicial action.

"While the jury in duty bound answered the question, their answer became of no value in view of preceding and succeeding questions, and should have been ignored. It was not a finding of fact, but an expression of opinion on the legal effect of the facts found.

"When the law, as old as the hornbooks, is applied to a number of the other answers above summarized, it is manifest that the plant as it was constructed and operated was, as regarded plaintiff, a nuisance, and no single contradictory answer, or any number of such answers, could lessen the force or change the legal effect of the previous findings.

"The situation is exactly the same as if a court were permitted to, and did, ask a jury if it found beyond a reasonable doubt that the defendant, in pursuance of a deliberately conceived design, and under such circumstances and in such a state of mind as to constitute 'express malice,' killed the deceased, and the jury were to answer in the affirmative, and were then, in response to the question whether they found the killing was murder in the first degree, to answer, 'We believe not.'

"Under such circumstances, the latter inquiry would be immaterial and useless and the answer have no legal value.

"The answers preceding that made to the fourteenth issue made it clear as a matter of law that the acts complained of were a nuisance, and the court should have ignored all other issues and answers, and have so declared."

In returning the case to the Commission, the Supreme Court wrote:

"Under the contradictory findings of the jury there was no warrant for rendering judgment against the plaintiff in the trial court. But this same condition, we think, precludes the rendition of judgment in his favor here. The jury found such facts as would constitute the operation of the defendant's plant a nuisance. At the same time, however, under an incorrect definition in the court's charge of a nuisance, it found its operation not to be a nuisance.

"Since it was essential to the plaintiff's case that the operation constitute a nuisance, with these contradictory findings on the question, we believe it best that the case be remanded for another trial according to the rules laid down in Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237."

The notation of the Supreme Court in disposing of the case is as follows:

"The judgments of the district court and Court of Civil Appeals are reversed for the reasons stated by us in our returning the case to the Commission of Appeals on its original report and quoted in the foregoing opinion. The case is remanded for further trial in accordance with the rules announced in Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237."

It is manifest that the Supreme Court intended to lay down the definite rule that, where there is a general finding of fact though in the form of a conclusion, which would deny liability, it cannot be disregarded, although there are specific findings of fact which, taken together, conclusively establish liability.

The fact that in the Brewster Case the court had for construction jury findings, and in the present case we have findings by the trial court, it seems to us could make no material difference. The purpose of fact findings by the trial court and fact findings by the jury is the same, and we can see no valid reason why different principles should be applied in construing their meaning.

The motion is overruled.

Overruled.