No. 51,852

RUSSELL SPEER, *Appellee and Cross-Appellant,* v. DIGHTON GRAIN, INC., LEO MEEKER, WALTER GORMLEY, BRENDA MEEKER, and RHONDA MEEKER, *Appellants and Cross-Appellees.*

(624 P.2d 952)

Opinion filed February 28, 1981.

*Tom R. Smith,* of Frey, Smith & Schmidt, of Liberal, argued the cause and was on the brief for appellants and cross-appellees Leo Meeker, Brenda Meeker and Rhonda Meeker.

*Dennis J. Keenan,* of Keenan, Mauch & Keenan, P.A., of Great Bend, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

FROMME, J.: This is one of twenty-two separate lawsuits arising in the wake of the insolvency and closing of Dighton Grain, Inc., a grain elevator corporation in Dighton, Kansas. The plaintiff sues as an unsecured creditor of the corporation. The action is brought by this creditor against the corporation and against the directors and corporate officers individually. The jury determined that these directors and corporate officers were grossly negligent in the performance of their corporate duties. The plaintiff creditor obtained personal judgments of $31,512.87, $15,756.44 and $15,756.44 against Leo, Brenda and Rhonda Meeker, respectively.

Certain background facts will be helpful in understanding the legal issues. Leo Meeker and his two daughters, Brenda and Rhonda, joined with Walter Gormley in organizing Dighton Grain, Inc., for the purpose of carrying on the grain business. The three Meekers are engaged also in farming approximately 1400 acres of irrigated land in Finney County, Kansas. On organization it was understood that Walter Gormley would be the manager in charge of this newly formed grain business. These four individuals were the stockholders and directors of the corporation. Leo Meeker was elected president; Gormley was elected vice-presi-

dent; Brenda Meeker was elected treasurer; and Rhonda Meeker was elected secretary. The business was organized May 18, 1973. At the end of the first fiscal year the books of the corporation were audited by a certified public accountant and it was apparent from the auditor's report that Gormley had mismanaged the corporation and that certain practices of Gormley had to be corrected. The books of the corporation showed many discrepancies. Gormley had written some $87,000.00 in corporate checks to himself and had restored only a portion of that amount to the corporate account. The record of grain shipped to the terminal was inadequate. The actual inventory of grain on hand was short and the book inventory was long. The obligation of the corporation for wheat on open storage was not accurately recorded in the books of the corporation.

However, the first year of operation was in a period of rapidly rising grain prices. The auditor estimated a substantial net profit even after he determined that Gormley had ended the year owing the corporation $54,000.00 for which he gave the corporation an unsecured note.

The audit report contained recommendations for new procedures to prevent future defalcations. It was suggested, among other things, that two signatures be required on every check and that Gormley discontinue his unauthorized use of the funds of the corporation. Various bookkeeping procedures were recommended along with more frequent directors' meetings. None of these recommendations were followed. The Meekers apparently continued to ignore mismanagement of this business by Gormley. Gormley continued to use the money of the corporation for his own personal use. At the end of the second fiscal year of operation a check of the corporation issued by Gormley for $110,000.00 was returned because of insufficient funds.

This check was for funds to cover wheat sold by the grain company and to be paid to the producers after the first of the year. When Leo Meeker received the check and payment thereof was refused by the bank he became concerned and borrowed $70,000.00 on his own personal account to clear the check. Then followed a flurry of activity by Leo Meeker to keep the elevator operating. In this Leo Meeker was unsuccessful. On June 27, 1975, the doors of Dighton Grain, Inc. were closed. The corporation could not get a renewal of its license. Leo Meeker was never

repaid his $70,000.00 loan to the corporation. He continues to hold a second mortgage on the elevator for that amount.

In January, 1976, the attorney general of Kansas, on behalf of the State Grain Inspection Department, filed a petition in the District Court of Lane County, Kansas for the appointment of Mr. Charles Bosley as receiver of the grain company pursuant to K.S.A. 34-2,104. Bosley took custody of all grain in the elevator on open storage and distributed it among the open storage owners. In addition, the receiver obtained the proceeds of a $71,000.00 surety bond. These funds were distributed among those persons who had placed grain on open storage with the elevator and whose grain could not be located. Even with the use of the bond proceeds, there was a shortage of grain delivered to the elevator on open storage. The State Grain Inspection Department closed the facility. It was at this time the receiver discovered that, although the corporation had handled in excess of 3,000,000 bushels of grain in its two-year existence, the corporation was insolvent and legally obligated to unsecured creditors in excess of $400,000.00.

A major portion of this indebtedness consisted of contracts having the effect of promissory notes whereby the corporation had agreed to pay stated sums to individual creditors after the first of January, 1976, for grain previously purchased by the corporation. The grain had been received at the elevator prior to June, 1975, when the doors to the elevator were closed. These contracts are apparently transactions approved by the Internal Revenue Service for the purpose of deferring income tax liability thereon to a year subsequent to the year of delivery of the grain. The producer can thereby deliver the grain to the elevator at a set price. The title to the grain passes when it is delivered but the producer cannot' obtain his money until the date set in the agreement, which is after the first of the following year.

The plaintiff, Russell Speer, held several of these contracts totaling $104,633.24 in value. The contracts were made in 1975, the grain was sold and delivered in 1975, and the amount of the sale was due and payable after January 2, 1976. Speer thereby became an unsecured creditor of the corporation.

In this same action but prior to the trial of the present claims, the plaintiff obtained a default judgment against both Dighton Grain, Inc., and Walter Gormley in the amount of $94,633.24.

Walter Gormley previously had been prosecuted and convicted for misappropriations from the business. It was stipulated by the parties before the trial of the present claims that any execution on the judgment against the corporation would be returned unsatisfied. With this background we turn to the issues raised on appeal.

The defendants-appellants raise a threshold question which should be disposed of at this time. They contend the evidence was insufficient to support the jury findings of gross negligence and mismanagement on the part of the three Meekers. It would serve no useful purpose to iterate the acts of mismanagement, improper use of corporate funds by Gormley, and poor bookkeeping practices that were brought to the attention of the Meekers by the auditor. The disregard of these matters continued for over a year. Gormley remained in charge of the business and continued to use corporate funds for his personal use. The Meekers as directors and officers of the corporation may not have assumed active duties or involved themselves in any part of the financial management of the day to day affairs of the corporation, but nevertheless a fiduciary duty was owed to the corporation. When they had knowledge of acts of mismanagement and misappropriation by Gormley, the managing officer, and failed to take steps to correct the same they breached this duty. *Sutton v. Reagan & Gee,* 405 S.W.2d 828, 835 (Tex. Civ. App. 1966). The standard of duty by which the conduct of a director of a corporation is to be judged should be that measure of attention, care, and ability which the ordinary director and officer of corporations of this kind would be reasonably and properly expected to bestow upon the affairs of the corporation. Annot., Directors—Liability for Defalcations, 25 A.L.R.3d 941, § 8, p. 977; 19 Am. Jur. 2d, Corporations § 1277, p. 684. There can be little, if any, doubt that the jury's finding of gross negligence and mismanagement on the part of the Meekers was adequately supported by the evidence.

This leads us to the primary question raised in this appeal. May an individual creditor of an insolvent corporation maintain an action against directors or officers of the corporation for damages based on gross negligence and mismanagement of the corporation?

The plaintiff-appellee asserts this question has been previously decided in this case in an interlocutory appeal brought to the Court of Appeals. *Mead v. Meeker,* 3 Kan. App. 2d 15, Syl. ¶ 2,

587 P.2d 1276 (1978). Accordingly, it is argued the issue became res judicata.

Appellants, on the other hand, argue that *Mead* is not controlling because the holding of the Court of Appeals was based upon a supposition that plaintiff's loss was from a conversion committed by Gormley. In our present case there was no theory of conversion committed by Gormley. Gormley did not convert grain belonging to plaintiff. There was no theory of conversion of plaintiff's property pled or proven. Plaintiff brought suit as an unsecured creditor based on the debt of the corporation evidenced by the contracts. Therefore, it is argued the holding in *Mead* has no application to the ultimate facts of this case.

An examination of *Mead v. Meeker,* 3 Kan. App. 2d 15, establishes that a joint interlocutory appeal was taken in *Mead v. Meeker* and in *Speer v. Meeker,* which cases were both pending in the Lane County District Court. The joint appeal was taken pursuant to the provisions of K.S.A. 60-2102(*b*) which states:

"When a district judge or associate district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, said judge shall so state in writing in such order. The court of appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten (10) days after the entry of the order under such terms and conditions as the supreme court may fix by rule."

In making the required order the district judge certified the controlling question of law to be:

"[W]hether or not a corporate creditor has a cause of action against a corporate officer or director for damages when the corporate officer or director was negligent in the discharge of corporate duties."

The Court of Appeals in deciding this question held:

"Where a corporate creditor has obtained a judgment against a corporation upon which execution has issued and been returned unsatisfied, the corporate officers or directors may be individually liable for that debt if it is established that their gross negligence or malfeasance as such officers or directors was such as to amount to participation or acquiescence in acts which resulted in the creditor's loss." 3 Kan. App. 2d 15, Syl. ¶ 2.

However, its decision appears to be based on the case of *Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856, 528 P.2d 1198 (1974). The Court of Appeals in conclusion said:

"The ruling of the district court is affirmed, allowing this matter to proceed to an evidentiary hearing wherein the trier of fact may ascertain whether the directors are liable under the law as stated in *Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856." 3 Kan. App. 2d at 18.

*Patrons* was not a suit brought by an unsecured creditor to recover personally from a director or officer for a debt owed by the corporation. In *Patrons* there was a conversion of the proceeds of certain construction contracts which had been assigned by the corporation to a bank. The corporation was liable for the conversion of proceeds received by the corporate officers and not paid over to the assignee bank, and suit for recovery was brought for tortious conversion. The corporation, however, was defunct. It was held that the president of the corporation could be held personally liable for the conversion, if the plaintiff could establish that the president participated in the conversion or had knowledge of the conversion amounting to acquiescence. On such a showing it was held the president had committed a breach of duty which he owed to the bank as assignor of the proceeds of the contracts. In such case a direct action by the bank against the president personally was permitted. The bank had acquired by assignment a special right or interest in the proceeds of the contracts not held by the stockholders or creditors of the corporation generally. That special interest entitled it to bring the action.

As a result of what has been said, there appears considerable question as to the validity of the decision in *Mead v. Meeker,* 3 Kan. App. 2d 15, with regard to a creditor's right to recover personally from individual directors or officers of the corporation for debts owed by the corporation.

This brings us to the next question of whether the previous decision of the Court of Appeals in this same case precludes this court from exercising jurisdiction to re-examine the question.

The plaintiff-appellee argues that the decision of the Court of Appeals on the interlocutory appeal in this case is now res judicata. However, the doctrine of res judicata cannot arise from a judgment rendered in an action until the time for appeal or modification has passed. 46 Am. Jur. 2d, Judgments § 457, p. 626. As previously noted the decision of the Court of Appeals was in an interlocutory appeal. After the decision the case was remanded to the district court, was tried, and now is in this court on appeal.

In *Board of Greenwood County Comm'rs v. Nadel,* 228 Kan. 469, 474, 618 P.2d 778 (1980), it is said:

"When a judgment has been pronounced and has become final then and only then have the rights of the defendants been duly disturbed. There is no vested right in a judgment held by the party in whose favor it is rendered so as to preclude its re-examination and vacation in the ordinary modes of appeal by law."

A decision of an appellate court in an earlier appeal in the same case becomes what is generally referred to as the "law of the case," which phrase merely expresses the practice of courts generally to refuse to reopen what has been decided. *State v. Hutchison,* 228 Kan. 279, Syl. ¶ 5, 615 P.2d 138 (1980). This practice of courts is not a limit on their power and a reconsideration of a question previously decided may be proper when the prior decision is patently erroneous. See *State v. Hutchison,* 228 Kan. 279, and cases cited therein at pp. 285, 286.

K.S.A. 1980 Supp. 60-2101(*b*) states:

"The supreme court shall have jurisdiction to correct, modify, vacate, or reverse any act, order, or judgment of a district court *or court of appeals* in order to assure that any such act, order or judgment is just, legal, and free of abuse." Emphasis supplied.

There can be no question that this court has jurisdiction to re-examine the question decided in *Mead v. Meeker,* 3 Kan. App. 2d 15. We will do so in the interest of justice to assure that it is "just, legal, and free of abuse."

At the outset of our re-examination of the question it should be noted that recovery was not pleaded or proven on a theory of alter ego or piercing the corporate veil. The case of *Amoco Chemicals Corporation v. Bach,* 222 Kan. 589, 567 P.2d 1337 (1977), lists some of the factors considered significant in justifying a disregard of the corporate entity. These are: (1) Undercapitalization of a one-man corporation, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) the use of the corporate entity in promoting injustice or fraud.

The alter ego theory was not the theory on which plaintiff proceeded in this case. The corporate funds were not siphoned by the Meekers, the corporation was not used as a facade for operations of the Meekers, and the Meekers did not use the corporate

entity to promote fraud. The evidence established that besides the $10,000.00, which the Meekers invested in the corporation, Leo Meeker loaned an additional $70,000.00 to the corporation in a last minute attempt to keep it afloat, and that he also held substantial contracts for grain delivered in 1975 to be paid in 1976. The obligations on these contracts were not paid by the corporation.

We find no persuasive case law in Kansas on the primary question presented. Two older cases, *Forbes v. Mohr,* 69 Kan. 342, 76 Pac. 827 (1904), and *Ramsey Petroleum Co. v. Adams,* 119 Kan. 844, 241 Pac. 433 (1925), were actions authorized by Kansas law. L. 1879, ch. 47, §§ 1, 2. This law authorized a creditor to sue a director by showing the corporation was insolvent because of embezzlement by an employee of the corporation and failure of the director to make examination and acquaint himself with the bank's condition. The statute has long since been repealed.

The present law provides:

"Whenever a corporation shall be insolvent, the district court, on the application of any creditor or stockholder thereof, may appoint, at any time, one or more persons to be receivers of and for the corporation, to take charge of its assets, estate, effects, business and affairs, and to collect the outstanding debts, claims and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, to appoint an agent or agents under them and to do all other acts which might be done by the corporation and which may be necessary or proper. The powers of the receivers shall be such and shall continue so long as the court shall deem necessary." K.S.A. 17-6901.

We find no provision in the present corporation code authorizing a creditor of an insolvent corporation to sue a director or officer for a debt of the corporation based on negligence or mismanagement of the director or officer which contributed to the insolvency. K.S.A. 17-7101 does not create or recognize any specific cause of action.

Mr. Bosley was appointed receiver on the petition of the Director of the State Grain Inspection Department under K.S.A. 34-2,104. His duties are specified in the statute. He determined the amount of the shortage of grain on storage. He marshaled and took possession of the grain on behalf of the grain inspection department. It became necessary in this case to cover shortages in stored grain so he collected the full liability possible from the

surety on the warehouseman's bond. Such bond is required by K.S.A. 34-229.

However, plaintiff had no claim to any stored grain and received nothing from the receiver from either the grain in storage or the proceeds from the bond. He was merely an unsecured creditor having sold his grain to the corporation and having received in return the contract creating an obligation of the corporation to pay in the future.

Any discussion of liability for corporate debts starts with the basic premise that a corporation and its stockholders are presumed separate and distinct. Debts of a corporation are not the individual indebtedness of its stockholders, directors or officers. *Amoco Chemicals Corporation v. Bach,* 222 Kan. at 593. However, a corporate officer or director acting on behalf of a corporation is personally liable for damages caused by his willful participation in acts of fraud or deceit to one directly injured. *Kirk v. H.G.P. Corporation, Inc.,* 208 Kan. 777, 494 P.2d 1087 (1972); *McFeeters v. Renollet,* 210 Kan. 158, Syl. ¶ 2, 500 P.2d 47 (1972); *Meehan v. Adams Enterprises, Inc.,* 211 Kan. 353, 507 P.2d 849 (1973); *State, ex rel., v. Koscot Interplanetary, Inc.,* 212 Kan. 668, Syl. ¶ 7, 512 P.2d 416 (1973). As previously pointed out an officer of a corporation is not personally liable for a conversion committed by the corporation or one of its officers merely by virtue of the office he holds; he must participate or have knowledge amounting to an acquiescence or commit a breach of duty he owes to the owner of the property before he will be held liable. *Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856, Syl. ¶ 4.

The question here presented does not fall within any of the above holdings. However, we do find certain cases from other states which speak to the question. In *Merriman v. Smith,* 599 S.W.2d 548 (Tenn. App. 1979), it is pointed out that creditors of a corporation generally have no right of action against directors for mismanagement. A director is an agent of the corporation and as such may become liable to the corporation. Directors may only become personally liable to a creditor by either (1) statute or (2) "by some conduct which creates a privity of contract between them, or which results in a tortious injury to the creditor" which results in particular injury to rights peculiar to the creditor.

In *Merriman* the court points out the directors or officers are liable to the corporation and the stockholders for loss resulting

from their malfeasance, misfeasance or their failure or neglect to discharge the duties imposed by their office and states:

"But it is otherwise as to creditors. The directors of a going corporation, whether able to pay its debts or not, owe no allegiance to them. It is true that the creditors may extend credit upon the faith that the company has assets to pay its debts, and that these assets are prudently managed, yet they are strangers to the directors; they maintain no fiduciary relation with them; there is a lack of privity between the two. [Citations omitted.]

"A creditor of a going corporation, being thus a mere stranger, we think it is clear that he can no more, either in law or equity, set in motion litigation to hold *its directors liable for losses attributable merely to inattention*, than could the creditor of any other insolvent debtor maintain a suit against his agent, under similar circumstances." *Merriman v. Smith,* 599 S.W.2d at 553.

In *Sutton v. Reagan & Gee,* 405 S.W.2d 828 (Tex. Civ. App. 1966), it is observed that considerable confusion exists in the cases dealing with the problem of liability of the affairs of the corporation. See Annots., 50 A.L.R. 462; 25 A.L.R.3d 941; 29 A.L.R.3d 660. The following reasoning of the Texas court seems sound:

"All courts seem to agree that a director owes a duty to the corporation to exercise due care in the management of the corporation's affairs. For breach of this duty, the director is clearly liable to the corporation for any loss it may suffer as a result of his neglect. So, also, the director's liability may be enforced by any person who is seeking to assert the claim of the corporation, or of the shareholders collectively, if there is a difference between the two, rather than his own individual claim. Thus, the director may be brought to task by (1) the receiver or trustee in bankruptcy of the corporation, or (2) a shareholder, by way of a representative action, to recover for the loss suffered by the corporation. In addition, under special circumstances not necessary to discuss here, a creditor may, through a creditor's bill brought on behalf of all creditors, enforce the director's liability.

"But where, as here, an individual creditor of the corporation brings suit, solely on his own behalf, for negligent mismanagement, agreement disappears. While all courts agree that directors owe a duty of due care to the corporation, it is difficult to find a defensible basis for concluding that directors owe a similar duty to creditors of the corporation. Application of the principles of the law of agency results in a holding that the director is not liable to the corporate creditors for negligent mismanagement, since an agent is not liable to the creditors of his principal for failing in his duty to such principal. Restatement, Agency 2d, § 352 (1957).

"Some courts refer to directors as 'trustees,' rather than agents. But the so-called 'trustee' courts are not in accord concerning the director's liability to creditors for mismanagement. This lack of harmony is due to disagreement as to the identity of the cestuis que trustent. Some of these courts allow the creditor to recover on the ground that a director is a trustee not only for the corporation, but also for the creditors. Anthony v. Jeffress, 172 N.C. 378, 90 S.E. 414. Other 'trustee' courts

deny the existence of a trustee-cestui que trust relationship between the director and a creditor of the corporation, and, consequently, will not allow an individual creditor to maintain an action for negligent mismanagement. Webb v. Cash, 35 Wyo. 398, 250 P. 1.

"It is difficult to understand the legal reasoning by which a director is converted into a trustee for the creditors of the corporation. It should be apparent that a director who attempts to act as trustee both for the corporation and for third persons who assert claims against such corporation will inevitably be placed in a position involving irreconcilable conflicts of duty, and will be forced to breach his duty to one or the other. This difficulty explains the general rule that a creditor who sues solely on his own behalf cannot maintain a personal action against directors who, by negligent mismanagement of the corporation's affairs, have breached their duty to the corporation to the consequent damage or injury of its creditors. Lawson-Richards, Inc. v. Blalock Lumber Co., 30 S.W.2d 797, wr. dism.; Anno; 50 A.L.R. 462 (1927).

"The rule of nonliability of directors to creditors for mismanagement finds support not only in the absence of any rational basis for imposing a duty upon the director to the creditor, but also in the fact that a recovery by an individual creditor in such cases would not bar the right of the corporation to recover from the director. 3 Fletcher [Cyclopedia of the Law of Corporations] § 182 [rev. ed. 1965]. To allow an individual creditor to recover in such a case would result in the imposition of double liability on the director." 405 S.W.2d at 834-35.

In *Super Valu Stores v. First Nat. Bank, Etc.,* 463 F. Supp. 1183 (M.D. Ga. 1979), it is said:

"In some cases a judgment creditor may maintain an action for a breach of the duty; however, in the first instance, the duty is one owed to the corporation which possesses the cause of action for breach of that duty.

"In general an action for mismanagement against corporate fiduciaries should be brought by the corporation or for its benefit and not by a single creditor in its own behalf." 463 F. Supp. at 1196.

The federal district court goes on to say that although Georgia has never explicitly adopted this view, it represents the better reasoned rule since it avoids the possibility of double liability on the director or officer.

The United States Court of Appeals, Fourth Circuit, in *Ford Motor Credit Company v. Minges,* 473 F.2d 918 (4th Cir. 1973), states:

"Drawing on several North Carolina cases, the district court correctly formulated the following rules for a creditor's standing to sue corporate directors for fraud or negligent mismanagement:

" '1. Where a creditor of a corporation has sustained an identifiable loss peculiar and personal to himself by reason of the fraud or negligent mismanagement of the corporation's business by its directors, he has a cause of action against the directors for the recovery of his personal loss, and such recovery will inure to him personally and not to the other creditors of the corporation.

" '2. Where the alleged fraud or negligent mismanagement has resulted in loss to the corporation and its creditors generally, the right of action belongs to the corporation and it may be maintained only in the name of the corporation or its receiver if it is insolvent. It is only where the corporation or its receiver declines upon request to bring the action that it may be maintained by an individual creditor, but even then the proceeds of any recovery are held for the benefit of all creditors of the corporation.' " 473 F.2d at 920-21.

See also *Goodwin v. Whitener,* 262 N.C. 582, 138 S.E.2d 232 (1964).

The reasoning of these cases is persuasive. It represents the better reasoned rule since it avoids the possibility of double liability on the director or officer. While directors may be held liable if they retain in a responsible position a man who has shown himself dishonest or unworthy of trust, such action involves a breach of duty to the corporation for which only the corporation or someone suing on its behalf may recover. Such action or inaction affects all stockholders and creditors of the corporation in like manner. *Graham v. Allis-Chalmers Mfg. Co.,* 41 Del. Ch. 78, 188 A.2d 125 (1963); *Sutton v. Reagan & Gee,* 405 S.W.2d 828.

There is no statutory authority authorizing suit by a creditor in the present case. The plaintiff could not base this cause of action on a conversion of his property or upon fraud and misrepresentation. No tortious act is alleged which resulted in identifiable loss peculiar to the plaintiff and his property. Suit was brought by the creditor solely on his own behalf. The duty which defendants breached and the consequent damage or injury was owed to the corporation and was common to creditors alike. The appointment of a receiver was a route open to plaintiff under K.S.A. 17-6901. If a receiver was appointed and then refused to pursue the action for mismanagement a derivative suit might then be maintained by an individual creditor, but even then proceeds of any recovery are held for the benefit of all creditors of the corporation. *Ford Motor Credit Company v. Minges,* 473 F.2d at 921.

Accordingly the holding in *Mead v. Meeker,* 3 Kan. App. 2d 15, 587 P.2d 1276 (1978), is overruled and it is *held:* A creditor of an insolvent corporation who sues solely on his own behalf cannot maintain a personal action against directors or officers who, by negligent mismanagement of the corporation's affairs, have breached their duty to the corporation to the consequent damage or injury of its creditors.

This holding renders the other questions raised in this appeal academic and they will not be addressed. The judgments are reversed.

HERD, J., concurring and dissenting: I concur with the majority's reversal of the trial court's judgment but for a different reason. I would reverse because the trial court erred in submitting the case on the theory of comparative negligence which is inapplicable to a gross negligence action.

I also disagree with the majority holding that a creditor of a corporation cannot maintain an action against a corporate officer and director for negligence in the discharge of his corporate duties resulting in injury to the creditor. I recognize there is a sharp division of authority on this issue. The authorities supporting denial of liability of the corporate officer and director to the creditor rely on the theory that the officer's duty runs only to the corporation and its stockholders. The corporation or its stockholders are the only parties with a valid claim for negligent management. Fletcher, Cyclopedia of the Law of Private Corporations § 1181 (rev. perm. ed. 1975).

The other theory is that corporate officers and directors owe a duty to the corporation, its stockholders and those who do business with the corporation, its creditors. Annot., 25 A.L.R. 3d 941, 955, 989.

A great weight of authority permits creditors to recover from directors and officers whose misconduct in managing the affairs of the corporation results in losses. Fletcher, Cyclopedia of the Law of Private Corporations § 1182. Some cases, particularly those involving banks and other lending institutions, hold directors are trustees for creditors of the corporation. *Trustees Mut. Building Fund, Etc. v. Bosseiux,* 3 F. 817 (E.D. Va. 1880); *Chicago Title & Tr. Co. v. Munday,* 297 Ill. 555, 131 N.E. 103 (1921); *Greenfield Savings Bank v. Abercrombie,* 211 Mass. 252, 97 N.E. 897 (1912); *Ellis v. Mercantile Co.,* 103 Miss. 560, 60 So. 649 (1912); *Campbell, Receiver v. Watson,* 62 N.J. Eq. 396, 50 A. 120 (1901). See also cases cited in Fletcher, Cyclopedia of the Law of Private Corporations § 1182. Courts allowed creditors' suits under a similar theory in the following cases: *Lyons v. Corder,* 253 Mo. 539, 162 S.W. 606 (1913); *Broderick v. Marcus,* 152 Misc. 413, 272 N.Y.S. 455 (1934); *Anthony v. Jeffress,* 172 N.C. 378, 90 S.E. 414 (1916).

The foregoing appears to be a much sounder theory to me, particularly in light of the tremendous increase in the formation of small family corporations in recent years. In most of those instances, it is difficult to distinguish between the corporate operations and the individual operations of the stockholders. This case illustrates well the hazards of the rule adopted by the majority. Dighton Grain, Inc. is a family corporation engaged in a business that is extremely risky to the public. In addition to the perils associated with the grain business, Dighton Grain is dealing in the livelihood of a farm community protected by bond only to the extent of its measured storage and is doing six to eight million dollars in gross business per year but is capitalized for only $30,000. Further, the corporation was qualified as a Subchapter S corporation for tax purposes which permitted the stockholders to treat the income as personal rather than corporate to avoid double taxation but further diminished the corporate identity, merging it with the individual stockholders. The persons exposed to loss by corporate activity are those who do business with it and become corporate creditors. The limited liability doctrine for corporations is undoubtedly a necessary incentive to obtain the capital accumulation to finance an industrial society. That principle is not challenged here. A stockholder would remain insulated from liability for corporate negligence or debt, but an officer who injures a creditor through his gross negligence in failing to discharge his corporate duty should be liable for the injury. The creditors should first look to the corporation for a remedy, then to the individual officers and directors if the corporate judgment is unsatisfied. K.S.A. 17-7101.

Except for *Mead v. Meeker,* 3 Kan. App. 2d 15, 587 P.2d 1276 (1978), the appellate courts of Kansas have not specifically adopted the theory I espouse. However, we are approaching it. In the case of *Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856, 528 P.2d 1198 (1974), we held the bank directors liable for conversion on the theory they personally committed the wrongful act, and in *McFeeters v. Renollet,* 210 Kan. 158, 500 P.2d 47 (1972), we again pierced the corporate veil against the officers and directors of a corporation on the theory the officer committed the wrongful act to the creditor. In each instance the personal act established a link, ripening into a duty, between the corporate

officer and the creditor. In *Mead,* the Court of Appeals followed *Patrons* on the theory a conversion had occurred to Mead's property as the result of the Meekers' negligence. Although a conversion did not actually occur, the Meekers' gross negligence was sufficient to allow Mead to bring suit. He sold and delivered his grain to Dighton Grain, Inc., leaving a mere contractual obligation for payment running from the grain company to Mead. This was perhaps not as shocking or distasteful an act as conversion, but to a creditor who has lost his entire wheat crop by breach of contract, it might be a distinction without a difference. I would adopt *Mead* and broaden it to cover the facts of the Dighton Grain case on the theory that the gross negligence of the officers of a corporation which damages a creditor establishes the same obligation to a creditor that conversion or personal representation does.

Under the corporate code, K.S.A. 17-7101, we have a statutory remedy. It provides:

"(*a*) When the officers, directors or stockholders of any corporation shall be liable by the provisions of this act to pay the debts of the corporation, or any part thereof, any person to whom they are liable may have an action against any one or more of them. The petition in any such action shall state the claim against the corporation and the ground on which the plaintiff expects to charge the defendants personally.

"(*b*) No suit shall be brought against any officer, director or stockholder for any debt of a corporation of which he is an officer, director or stockholder, until judgment be obtained therefor against the corporation and execution thereon returned unsatisfied."

It is argued the remedy provided is available only for liabilities created by "the provisions of the act." I would construe the statute to provide the procedure for suit against corporate officers and directors regardless of the theory of liability. In Vernon's Kansas General Corp. Code § 17-7101 (1975), the author's comment states:

"This section expands upon Kansas law relating to suits against officers, directors or stockholders by providing that when they are liable to pay debts of the corporation, any person to whom they are liable may have an action against any one or more of them."

Here the Meekers, all corporate officers, refused to take recommended precautionary measures after they learned of Gormley's embezzlement and mismanagement. Gormley's mismanagement of the corporation continued and was ignored by the corporate

officers and directors. As a direct result of the Meekers' willful and deliberate disregard of corporate affairs, Dighton Grain, Inc. became insolvent, virtually as if intended. We are reminded of the following statement of law from *Beard v. Achenbach Memorial Hospital Ass'n.,* 170 F.2d 859, 862 (10th Cir. 1948):

"The directors of a corporation are charged with the duty of managing its affairs honestly and in good faith, and they must exercise ordinary and reasonable care in the performance of their duties. They must act with fidelity to the interests of the corporation, and they are jointly and severally liable for losses of the corporation proximately resulting from bad faith, fraudulent breaches of trust, or gross or wilful negligence in the discharge of their duties."

We turn now to the remedies available to the creditor in the instant case. If the corporation had been insolvent, he could request the appointment of a general receiver to take control of the assets and business affairs of the corporation. K.S.A. 17-6901. An action could then be brought in the name of the receiver against the corporation. If the action were successful but the judgment was returned unsatisfied, an action could be brought against the corporate officers for gross negligence. The receiver action would be on behalf of all creditors. The trial court in the exercise of its discretion could refuse to appoint a receiver. Absent abuse of discretion, its refusal would stand. The receiver could refuse to pursue the creditor's remedy against the officers; apparently, for any reason, as an "arm of the court." Fletcher, Cyclopedia of the Law of Private Corporations § 7785. After the refusal, the creditor can pursue his individual remedy against the officers. Fletcher, Cyclopedia of the Law of Private Corporations §§ 7785, 7817. A creditor may, after he has exhausted all legal remedies, institute a creditor's bill in the name of the corporation. Such an action could be on behalf of himself and all other creditors similarly situated and would require the claim be reduced to judgment prior to the suit. 21 Am. Jur. 2d, Creditor's Bills §§ 9, 10, pp. 10-11.

Speer chose to pursue an individual remedy against Dighton Grain and its officers. I believe that remedy may be allowed and is not barred because of the presence of the receiver. The receiver in this case was not a general receiver in control of all of the corporate assets. The Kansas grain inspection department through the Kansas attorney general obtained the appointment of a receiver for Dighton Grain for the *limited purpose* of possessing all the open stored grain in the Dighton elevator and in terminal

warehouses used by Dighton Grain, Incorporated. The state grain inspection department is responsible only for open storage and the required warehouse bond is based on the elevator's storage capacity. In this case the bond was in the amount of $71,000. The receiver performed his limited function by possessing, selling and distributing the proceeds from the open stored grain to the owners on a pro rata basis. The receiver has no authority over the deferred contracts which are the subject of this suit. Clark, Law of Receivers § 786 (3d ed. 1959).

Finally, we note that where several actions are brought by individual creditors, the trial court may, in its discretion, consolidate those actions against Dighton Grain for trial pursuant to K.S.A. 60-242(a).

I would remand this case for a new trial.